Sandifer, J.
(dissenting). I would affirm the determination of the trial court. "On this appeal we are confronted with the issue as to whether the findings of fact are supported by the weight of the evidence. In a nonjury case, this court’s inquiry is not limited to whether the findings were supported by some credible evidence. If it appears on all the credible evidence that a different finding or a finding different from the court is not unreasonable, then this court must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from *464 such testimony.” (Shipman v Words of Power Missionary Enters., 54 AD2d 1052, 1053.)
In weighing the relative force of conflicting testimony and the relative strength of conflicting inferences, the trial court’s assessment of credibility should be accorded great weight. (Cf., Matter of Liccione v John H., 65 NY2d 826, 827.)
The evidence in the trial court revealed that the purchase price of the building was $390,000. Interestingly, the evidence also revealed that, although sidewalk repair liens were noticed in the title examination, no prepurchase engineering report was ordered to ascertain the existence of any structural problems. Also, the owner’s managing agent inspected only one apartment prior to purchase.
The owner maintained below that he had no notice of any dangerous conditions prior to April 22, 1986, when the partial vacate order was issued.
The trial court concluded that the purchaser had no interest in the physical condition of the property at the time of purchase. The court was of the opinion that the building was purchased with the hope that it would soon become vacant. The property is located in what the court refers to as a "hot” location of Manhattan where vacant buildings are worth substantially more than property burdened with rent-controlled or rent-stabilized tenants.
The majority notes, that at the time of the collapse of the rear wall, the building was operating at a loss. The fact that the building operated at a loss was acknowledged by the trial court. In addition, however, the trial court noted that the net operating loss included $33,067 for payments on the first and second mortgages. Moreover, the trial court noted that there was a dearth of information on the total economic viability of the building which would include depreciation and other tax consequences.
Certainly, it is permissible for the trial court to draw unfavorable inferences against the owner for his failure to provide financial details in support of his position. (Cf., Noce v Kaufman, 2 NY2d 347, 353.)
The trial court chose to credit the valuation of the repair costs as put forth by the tenants’ experts. The court went on to hold that the owner failed to establish that the building would not be profitable if the repairs were done.
The trial court’s determination that the owner was interested in a vacant building, above all else, is certainly sup *465 ported by the evidence and inferences that may be derived from the lack of evidence. The record below clearly supports the court’s decision to reject the opinion of the owner’s expert in favor of the opinion of the tenant’s experts.
In my opinion, the findings and determinations of the trial court are not against the weight of the credible evidence nor contrary to law, consequently they should not be disturbed. (See, Collier v Lukes, 36 AD2d 662.)
Parness, J. P., and Ostrau, J., concur; Sandifer, J., dissents in a separate memorandum.